```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHILLIP MARTINEZ,                           :
                                            :
                            Plaintiff,      :    07 Civ. 6453 (GBD) (RLE) (ECF)
                                            :
            -against-                       :
                                            :
THE CITY UNIVERSITY OF THE NEW              :
YORK; and DR. SEBASTIAN PERSICO, in his     :
official capacity,                          :
                                            :
                            Defendants.     :
------------------------------------------------------------X
```

## DEFENDANTS' STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York [1], Defendants CITY UNIVERSITY OF NEW YORK ("CUNY") and DR. SEBASTIAN PERSICO, by their attorney, ANDREW M. CUOMO, Attorney General of the State of New York, respectfully contend that there are no genuine issues as to the following material facts and that they are entitled to summary judgment based thereupon:

### I. The Parties

1. Plaintiff was employed by CUNY at The Graduate Center in the job category of Higher Education Officer ("HEO"), with the functional title of Director of the Graphic Arts

---

[1] The following documents are also submitted in support of Defendants' motion for summary judgment: (1) Notice of Motion for Summary Judgment; (2) Memorandum of Law in Support of Defendants' Motion, dated August 19, 2009; (3) Declaration of Dr. Sebastian Persico ("Persico Decl."), dated August 17, 2009; (4) Declaration of Yosette Jones Johnson ("Jones Johnson Decl."), dated August 17, 2009; (5) Declaration of Christine A. Ryan, Esq. ("Ryan Decl."), dated August 17, 2009; and (6) Exhibits to the Declarations Submitted in Support of Defendants' Motion for Summary Judgment ("Exh."). Relevant excerpts from the deposition testimony of Plaintiff Phillip Martinez ("Pl. Tr."), Patricia Matthews ("Matthews Tr."), Mamie Marks ("Marks Tr."), and James Santore ("Santore Tr.") are also contained in the accompanying exhibit volumes as Exhibits C, D, E and F, respectively.

1

Production Department, from May 11, 1998 through June 30, 2006. (Complaint ("Compl.") ¶ 2; Jones Johnson Decl. ¶ 9; Persico Decl ¶ 7; Pl. Tr. 19:16-22, 125:6-11.)

2. Plaintiff describes his national origin as Hispanic and Caribbean and his race as Cuban. (Pl. Tr. 10:22-25, 11:1-6.)

3. Defendant CUNY is a legal entity constituted under N.Y. Educ. Law § 6201 et seq. The Graduate Center is a senior college in the CUNY system and is not a distinct, legally cognizable separate entity. See N.Y. Educ. Law §§ 6202 (2) and (5). Defendant Dr. Sebastian Persico returned to CUNY as Vice President for Finance and Administration at The Graduate Center. Dr. Persico was promoted to Senior Vice President in 2004 and remains employed at The Graduate Center in that capacity and title. From January 2002 through June 30, 2006, Dr. Persico was Plaintiff's immediate supervisor.

## II.     Plaintiff's Employment At The Graduate Center

4. Plaintiff's job responsibilities included the supervision of the employees in the graphic arts department, also known as the print shop, and the management and operation of the print shop. (Persico Decl. ¶¶ 7-9; Jones Johnson Decl. ¶¶ 11-14; Pl. Tr. 21:13-25, 22-23, 24:1-13, 25:7-25, 26-27.)

5. Plaintiff testified at deposition that it was not his job to run the printing machines. (Pl. Tr. 24:9-13.)

6. Plaintiff supervised a staff of eight, including six full time CUNY employees, the College Printshop Coordinator Mr. James Santore, and one Xerox Corporation contract employee. (Persico Decl. ¶ 9; Jones Johnson Decl. ¶¶ 11-14, Pl. Tr. 25:15-25, 27:18-22.)

7. After Dr. Persico's hire in January 2002, Plaintiff reported directly to Dr. Persico.

2

(Persico Decl. ¶¶ 2, 4; Pl. Tr. 27:23-25, 28:1-7.)

8. From January 2002 through June 30, 2006, Plaintiff and the following four supervisors reported directly to Dr. Persico: (1) Stuart Shor, Assistant Vice President for Finance; (2) John Flaherty, College Security Director; (3) Michael Mahoney, Chief Administration Superintendent; and (4) Yosette Jones Johnson, Assistant Vice President for Faculty and Staff Relations. (Jones Johnson Decl. ¶ 10 ; Persico Decl. ¶ 4.)

9. Of the above-identified five supervisors, only Plaintiff held the HEO title. (Jones Johnson Decl. ¶ 11; Persico Decl. ¶ 5.)

### A. The Collective Bargaining Agreement And The Certificate of Continuous Administrative Service

10. The 2002-2007 PSC / CUNY collective bargaining agreement ("CBA") provided that employees serving in the HEO title were subject to a series of annual and biannual reappointments at CUNY's discretion until the sixth reappointment, after eight years of service. An appointment year begins July 1 and ends June 30. An employee holding a multiple-year appointment served until the expiration of that appointment. The first two appointments were annual, or less if the appointment occurred mid-year as did Mr. Martinez's. Upon the fourth reappointment, appointments were made biannually. After the second reappointment, notice of non-reappointment was due on or before March 1. (Jones Johnson Decl. ¶ 11; Persico Decl. ¶ 16.)

11. At the time for the sixth reappointment after eight years of service, upon recommendation of the President and approval of the Board of Trustees of CUNY, an employee who is granted a subsequent reappointment was entitled to a Certificate of Continuous

3

Administrative Service ("CCA") under CBA Section 13.3b. (Jones Johnson Decl. ¶ 17; Persico Decl. ¶ 12.)

12. A CCA is sometimes referred to as "13.3b status," a reference to the CBA section where the CCA is defined. A CCA is not tenure and an employee in Mr. Martinez's HEO job category was not eligible for tenure. (Jones Johnson Decl. ¶ 18.)

13. Upon the award of a CCA, the employee is no longer subject to annual or multiple year appointments. Instead, termination can only be made under the limited conditions prescribed in Section 13.12a, which included three consecutive unsatisfactory evaluations in three successive fiscal years. (Jones Johnson Decl. ¶ 19; Persico Decl. ¶¶ 13-14.)

14. Plaintiff was the only supervisor who reported to Dr. Persico who held the HEO job category and was a member of the PSC union. Consequently, Plaintiff was the only supervisor who could potentially acquire a CCA. (Persico Decl. ¶ 15.)

### B. Plaintiff's Reappointments

15. Plaintiff was recommended for reappointment by former Vice President Bruce Kohan for four full terms and one partial terms; specifically, (1) May 11, 1998 through June 30, 1998, (2) July 1, 1998 through June 30, 1999 (3) July 1, 1999 through June 30, 2000, (4) July 1, 2000 through June 30, 2001, and (5) July 1, 2001 through June 30, 2002. (Jones Johnson Decl. ¶ 21; Persico Decl. ¶ 16.)

16. Thereafter, Dr. Persico recommended Plaintiff's reappointment for two full terms; specifically, (1) July 1, 2002 through June 30, 2004 and (2) July 1, 2004 through June 30, 2006. (Jones Johnson Decl. ¶ 22; Persico Decl. ¶ 17.)

4

### C. Plaintiff's Evaluations

17. Plaintiff's received three evaluations during his employment at the Graduate Center on March 9, 2001, January 11, 2002 and January 24, 2006. Former Vice President Bruce Kohan conducted the first two evaluations, and Dr. Persico conducted the last evaluation. (Pl. Tr. 35:5-1; Jones Johnson Decl. ¶ 23; Persico Decl. ¶ 17.)

18. Evaluations take into account the complete performance for the evaluated period, including counseling memos and discipline. (Matthews Tr. 101:7-21.)

## III. Plaintiff's Disciplinary History

### A. The Fall 2004 Investigation

19. In Fall 2004, Mr. James Santore, the print shop coordinator, went to Dr. Persico's office to complain about the manner in which Plaintiff ran the print shop. (Persico Decl. ¶ 19; Santore Tr. 46:17-25, 47-52, 57-59.)

20. Mr. Santore told Dr. Persico that Plaintiff was using print shop staff, paper, and equipment to produce material that bore no relationship to The Graduate Center's business. (Persico Decl ¶ 19; Santore Tr. 46-47; 57-59.)

21. Dr. Persico informed Ms. Jones Johnson of what Mr. Santore had alleged. (Jones Johnson Decl. ¶ 24; Persico Decl. ¶ 19.)

22. Ms. Jones Johnson then initiated an investigation. Ms. Patricia Matthews, the Director or Human Resources, managed the investigation and Ms. Mamie Marks, a Human Resources staff member, conducted most of the investigatory interviews. (Jones Johnson Decl. ¶ 25; Matthews Tr. 12:3-14, 58:3-25, 59-63, 64:1-13; Marks Tr. 34: 4-25; 37:13-24.)

23. Plaintiff and his staff were interviewed. (Marks Tr. 34: 4-25, 37:13-24; Pl. Tr. 3-

6; Jones Johnson Decl. ¶ 26.)

24. On January 7, 2005, Ms. Matthews told Plaintiff that he was entitled to have a union representative present during the interview. Plaintiff responded that he did not see any reason for union representation. (Pl. Tr. 41:6-22.)

25. At that meeting, Ms. Matthews informed Plaintiff that he was making unauthorized copies. Ms. Matthews then showed Plaintiff the "Charanga 76" reunion booklet and asked Plaintiff if he knew what it was. Plaintiff admitted that he did and told her "yes, I did that, that's fine... [.]" (Pl. Tr. 41:6-25, 42:1-10.)

26. Ms. Matthews had a copy of the booklet at the meeting. (Pl. Tr. 41:23-25; 42:1-10.)

27. Plaintiff signed a statement memorializing his interview with Ms. Matthews. (Pl. Tr. 42:10-25, 43-44 (Pl. Tr. Exh. B); Jones Johnson Decl. ¶ 26.)

28. Plaintiff testified at deposition that the facts set forth in his interview statement are true. (Pl. Tr. 45:16-26, 46:1-15.)

29. Dr. Persico had no participation in the investigation during its pendency. (Jones Johnson Decl ¶ 27; Persico Decl. ¶ 20; Matthews Tr. 67:10-13, 75:20-25, 76; Marks Tr. 68:19-25, 69:1-22.)

30. After Ms. Matthews and Ms. Marks concluded the investigation, Ms. Matthews consulted with Ms. Jones Johnson. In turn, Ms. Jones Johnson consulted with Dr. Persico and The Graduate Center President regarding the findings and the potential for charges. As is the usual practice, CUNY's Office of the General Counsel was also consulted. (Jones Johnson Decl ¶ 28; Persico Decl. ¶ 21; Matthews Tr. 68:19-25, 69:1-21, 77:1-16, 78, 79:1-18.)

6

31.     On April 18, 2005, The Graduate Center President served Plaintiff with the Notice of Intent to Prefer Charges ("Notice"). This Notice advised Plaintiff that the President intended to prefer thirteen charges against him, alleging that he had engaged in conduct unbecoming a member of the staff and abused his position. (Jones Johnson Decl ¶ 29; Persico Decl. ¶ 22.)

32.     The Notice further advised Plaintiff that if the charges were proven true, the President intended to seek a sixty calendar day unpaid suspension as penalty. (Jones Johnson Decl ¶ 30; Persico Decl. ¶ 22; Matthews Tr. 73:7-25; Pl. Tr. 60:22-25 (Pl. Tr. Exh. C).)

33.     On July 13, 2005, Plaintiff settled the charges. (Jones Johnson Decl ¶ 31; Persico Decl. ¶ 23.)

34.     In settling the charges, Plaintiff admitted that in Fall 2004, he used his staff and The Graduate Center's time, materials, and equipment to produce materials for the musical group "Charanga 76." Plaintiff admitted that he was a member of this group and its Director. (Compl. ¶ 6; Pl. Tr. 62:19-25- 64:3-15, 67:8-25, 68:1-8, 70:6-25, 71- 72, 73:1-13 (Pl. Tr. Exh. D); Jones Johnson Decl ¶ 30; Persico Decl. ¶¶ 23-24.)

35.     Plaintiff also acknowledged in the settlement agreement that "raising your fists against a person as if you were going to punch him is not appropriate conduct for a supervisor." (Jones Johnson Decl ¶ 33; Persico Decl. ¶ 25.)

36.     By settling the charges, Plaintiff agreed to the following penalty: (1) a letter of reprimand would be placed in his personnel file, (2) he would serve a one week suspension without pay, and (3) 21 days, 3 hours and 30 minutes would be deducted from his annual leave accruals (totaling the equivalent of a one month/30 day suspension without pay). (Jones Johnson Decl ¶ 34; Persico Decl. ¶ 26.)

37.   Plaintiff confirmed that he consulted with an attorney regarding all aspects of the settlement agreement. (Pl. Tr.: 70:6-25, 71, 72, 73:1-5; Jones Johnson Decl. ¶ 35; Persico Decl. ¶ 27.)

38.   Plaintiff, the Chancellor's designee for CUNY, Plaintiff's PSC union representative, and Ms. Jones Johnson executed the settlement agreement. (Jones Johnson Decl. ¶ 36; Persico Decl. ¶ 28.)

39.   Dr. Persico did not participate in the negotiation of those charges, the agreement to settle the charges, or the imposed penalty. (Jones Johnson Decl. ¶ 37; Persico Decl. ¶ 29.)

### B.   The Fall 2005 Investigation

40.   In Fall 2005, Human Resources opened a second investigation into additional allegations of misconduct by Plaintiff. (Jones Johnson Decl. ¶ 38; Persico Decl. ¶ 30.)

41.   Human Resources interviewed Plaintiff and his staff. Six of Mr. Martinez's staff members signed statements. (Jones Johnson Decl. ¶ 38; Pl. Tr. 75:17-25, 76, 77:1-7, 78, 79:11-25, 80-86 (Pl. Tr. Exh. F).)

42.   Upon the conclusion of the investigation in late February 2006 or early March 2006, Human Resources, determined that it would not proceed with charges. (Jones Johnson Decl. ¶ 40.)

### IV.   The Evaluation Conference And Plaintiff's Non-Reappointment

43.   On January 24, 2006, Dr. Persico and Plaintiff met for Plaintiff's performance evaluation conference. (Persico Decl. ¶ 31; Pl. Tr. 87:16-25, 88-90, 91:1-11.)

44.   Prior to this meeting, Dr. Persico and Plaintiff had not discussed the Fall 2004 or Fall 2005 investigations, the charges, settlement or discipline. (Persico Decl. ¶ 31.)

8

45. During the conference, Dr. Persico raised the charges that had been brought against Plaintiff and gave Plaintiff an opportunity to discuss the charges. (Persico Decl. ¶ 31; Pl. Tr. 87:16-25, 88-90, 91:1-11.)

46. Plaintiff testified at his deposition that, at the conference, Dr. Persico "went to the whole brochure thing, to the whole Charanga 76, the concert, and blah, blah, blah. ... He kept carrying on about the whole thing, about the whole brochure, and blah, blah, blah, blah. I tried to a couple of time to bring it back to the performance, to the job, that I think I had done a good job but he didn't –he didn't participate in that conversation. It went back to the brochure, I don't know, like pinpointed me against the wall, and that was the whole context." (Pl. Tr. 88-89:1-3.)

47. Plaintiff also testified at his deposition that Dr. Persico said that Plaintiff had abused his position, had problems with his staff, and expressed a negative opinion about Plaintiff's performance. (Pl. Tr. 89:23-24, 90:1-3, 108:5-109:1-7.)

48. Dr. Persico also discussed the recent reopening of the Human Resources investigation into additional allegations of misconduct. (Persico Decl. ¶ 35; Pl. Tr. 106:21-25, 107.)

49. At the conference's conclusion, Dr. Persico informed Plaintiff that Dr. Persico would not recommend Plaintiff's reappointment. (Persico Decl. ¶ 37.)

50. Dr. Persico memorialized the conference in a memorandum and sent it to Plaintiff. (Persico Decl. ¶ 38; Pl. Tr. 93:4-25.)

51. Plaintiff testified at deposition that the evaluation conference memo represents Plaintiff's recollection of that conference. (Pl. Tr. 94:1-16.)

52. On February 7, 2006, The Graduate Center President wrote to Plaintiff and

informed Plaintiff of his non-reappointment effective June 30, 2006. (Jones Johnson Decl. ¶ 43; Persico Decl. ¶ 39; Pl. Tr. 125: 5-8.)

53.     Plaintiff conceded at his deposition that CUNY was not required to give him notice under the bylaws that he would no longer be affiliated with the university. (Pl. Tr. 36:13-18.)

54.     In Summer 2006, Dr. Persico directed that the Graphic Arts Department report to Ms. Nancy Saieh. At that time, Ms. Saieh was supervised by Assistant Vice President for Finance Stuart Shor. (Persico Decl. ¶ 46.)

55.     The Graphic Arts Department continues to report to Ms. Saieh. (Persico Decl. ¶ 47; Matthews Tr. 111:2-25; Marks Tr. 77:9-14.)

56.     Mr. Santore continues to hold the same position, print shop coordinator, he held prior to and during Plaintiff's employment. (Persico Decl. ¶ 49; Santore Tr. 56-57; Matthews Tr. 120:5-15, 121:1-9.)

57.     Ms. Saieh continues to report to Stuart Shor. (Persico Decl. ¶ 48; Marks Tr. 82:12-14.)

## VII.     Plaintiff's Disparate Treatment Claim And Alleged Comparators

### A.     Mr. Michael Feeney

58.     In 2005, the Graduate Center disciplined Michael Feeney for engaging in consensual sex with a subordinate employee on The Graduate Center's property. (Jones Johnson Decl. ¶ 54; Marks Tr. 14:14-25; Matthews Tr. 21:14-25, 22-28, 29:1-13.)

59.     Mr. Feeney, a self-identified white male, began his employment with CUNY at its Hunter College campus on May 10, 2999 as a level 3 Purchasing Agent. (Jones Johnson Decl. ¶

51.)

60. On June 25, 2001, he moved to the Graduate Center with the functional title Associate Director of Purchasing and the payroll title Higher Education assistant ("HEa"). (Jones Johnson Decl. ¶ 51.)

61. On July 1, 2004, to fill a vacancy during a search, Mr. Feeney assumed the functional title of Acting Director of Purchasing and the payroll title of Sub-Higher Education Associate ("Sub-HEA"). (Jones Johnson Decl. ¶ 51.)

62. Mr. Feeney's supervisor was Mr. Stuart Shor. Mr. Shor was responsible for Mr. Feeney's performance evaluations. (Jones Johnson Decl. ¶ 53; Persico Decl. ¶¶ 43, 46; Marks Tr. 27:14-22.)

63. An HEA title is a lower payroll title than Plaintiff's HEO title. (Jones Johnson Decl. ¶ 52.)

64. In December 2004, Human Resources was notified of allegations of employee misconduct by Mr. Feeney. Human Resources initiated an investigation. (Jones Johnson Decl. ¶ 54; Matthews Tr. 21: 14-21, 25:4-24)

65. On June 16, 2005, Human Resources served Mr. Feeney with a Notice of Intent to Prefer Charges. The Notice of Intent stated that if Mr. Feeney was found guilty of the charges, the President would seek a sixty day suspension without pay. Each charge was based on a December 17, 2004 incident where Mr. Feeney engaged in sexual activities with his subordinate Ms. Bravo on The Graduate Center premises. (Jones Johnson Decl. ¶¶ 56-57.)

66. On September 8, 2005, Mr. Feeney settled the charges. Mr. Feeney admitted to the conduct specified in each of the four charges. (Jones Johnson Decl. ¶ 59.)

67. According to the settlement, Mr. Feeney received a letter of reprimand in his personnel file, a 10 day suspension without pay, and eleven and one-half days deducted from his annual leave accruals for a total of twenty one and one-half days of suspension. Mr. Feeney was also required to attend sexual harassment training and forfeit his Step 1 and Step 2 rights to the CBA grievance procedure if the misconduct occurred again. (Jones Johnson Decl. ¶ 60; Matthews Tr. 29:5-13.)

68. Dr. Persico was not copied on Mr. Feeney's charges or the notice of settlement. Mr. Stuart Shor, as Mr. Feeney's supervisor, received the notice from Human Resources. (Persico Decl. ¶ 43; Jones Johnson Decl. ¶ 61.)

69. Mr. Feeney received two evaluations prior to this incident on February 19, 2002 and February 26, 2004. Dr. Persico did not conduct any evaluations of Mr. Feeney. (Persico Decl. ¶ 44; Jones Johnson Decl. ¶ 62.)

70. The February 26, 2004 evaluation was the last evaluation Mr. Feeney received at the Graduate Center. As of June 30, 2008, Mr. Feeney no longer works at the Graduate Center. (Jones Johnson Decl. ¶ 63.)

71. At the time of Mr. Feeney's departure, Mr. Feeney had not received a CCA. (Jones Johnson Decl. ¶ 64.)

72. Plaintiff admitted at his deposition that he did not know if Mr. Feeney was a HEO or if Mr. Feeney received discipline for his misconduct. (Pl. Tr. 115:22-25,120 13-16.)

**B.   *The Advocate* Interview and Article**

73. The Advocate is the Graduate Center's student newspaper. (Pl. Tr. 143:23-25.)

74. In The Advocate's February 2006 edition, in an article entitled "*Sex, Love and*

12

*Relationship Issue*," six individuals answered the following interview question: "Where is the best place to have sex in the graduate center?" (Pl. Tr. 164-165; 166:1-10.)

75. Human Resources never received any complaint about or in connection with this student newspaper article. (Jones Johnson Decl ¶¶ 65-66.)

76. At his deposition, Plaintiff admitted that he did not know whether the six individuals are employees, professors, or students of The Graduate Center. Plaintiff also admitted that he did not know if the individuals gave false names, false departments, or were even affiliated with The Graduate Center. (Pl. Tr. 166:11-25, 167, 168:1-14.)

### VIII. Plaintiff's Hostile Work Environment Claim

77. No one at CUNY ever made comments to Plaintiff that were disparaging of Plaintiff's national origin. (Pl. Tr. 110:24-25, 111-113.)

78. Plaintiff never heard any verbal comments or saw any nonverbal actions by Dr. Persico, Ms. Matthews, or any administrators at CUNY disparaging of Plaintiff's national origin. (Pl. Tr. 110:24-25, 111-113.)

79. Plaintiff never saw or heard that Dr. Persico, or any CUNY administrators, circulated or displayed materials disparaging of Plaintiff's national origin. (Pl. Tr. 110:24-25, 111-113.)

### IX. Plaintiff's Federal Complaint

80. On March 11, 2007, Plaintiff brought a three count complaint in the United States District Court for the District of New Jersey against CUNY and Dr. Sebastian Persico, in his individual and official capacities, alleging national origin discrimination. (Compl. ¶¶ 1-22; Pl. Tr. 109:16-20.)

13

81. In count one of the complaint, Plaintiff alleges that CUNY and Dr. Persico in his individual capacity created a national origin based hostile work environment against him, enforced the collective bargaining agreement between Plaintiff's union and CUNY in a discriminatory manner based on Plaintiff's national origin, and treated Plaintiff disparately as compared to other white HEO employees at the Graduate Center in violation of Title VII, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 2000e-5(f)(1). (Compl. ¶¶ 13-15.)

82. In count two, Plaintiff alleges that CUNY and Dr. Persico in his individual capacity discriminated against Plaintiff "because he is Hispanic" in violation of 42 U.S.C. § 1981. (Compl. ¶¶ 16-18.)

83. In count three, Plaintiff brings a claim against CUNY pursuant to 42 U.S.C. § 1983 and alleges that CUNY violated his rights to Equal Protection and Due Process as guaranteed by the Fourteenth Amendment of the U.S. Constitution. (Compl. ¶¶ 20-22.)

84. Plaintiff alleges that he filed a charge of discrimination with the EEOC "within the statutory period" and brought this suit "after having demanded a right to sue letter." (Compl. ¶ 1.)

85. Plaintiff did not produce either an EEOC charge of discrimination or an EEOC right to sue letter during discovery. (Exh. G.)

86. A letter dated May 30, 2007, from the EEOC to CUNY's Office of the General Counsel states that the EEOC has no record of a charge of discrimination by Plaintiff. (Exh. H.)

87. Plaintiff never complained of discrimination internally to the Graduate Center or CUNY. (Jones Johnson Decl. ¶¶ 48-49.)

Dated: New York, New York
       August 19, 2009

                                         Respectfully submitted,

                                         ANDREW M. CUOMO
                                         Attorney General of the State of New York
                                         <u>Attorney for Defendants</u>
                                         By:

                                         _____/s/_____
                                         Christine A. Ryan
                                         Assistant Attorney General
                                         120 Broadway, 24th Floor
                                         New York, New York 10271
                                         Tel.: (212) 416-8652

07 CV 06453 (GBD)(RLE)   **(ORIGINAL FILED BY .E.C.F)**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

PHILLIP MARTINEZ,

    Plaintiff,

- against -

THE CITY UNIVERSITY OF NEW YORK; and DR. SEBASTIAN PERSICO, both in his official and personal capacity,

    Defendants.

---

### DEFENDANTS' STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1

---

ANDREW M. CUOMO
Attorney General of the State of New York

ATTORNEY FOR DEFENDANTS

BY: CHRISTINE A. RYAN
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271

Tel. No.: (212) 416-8652
Fax Nos.: 212-416-6075/6009
(Not for Service of Papers)

Due Service of a copy of the within is admitted this
_____ day of _____ 2009